**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| BANCINSURE, INC., | Civil No. 04-4579 (JRT/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| MARSHALL BANK, N.A., | |
| Defendant. | |

Mark J. Johnson and David H. Gregerson, **GREGERSON ROSOW JOHNSON & NILAN, LTD**, 650 Third Avenue South, Suite 1600, Minneapolis, MN 55402, for plaintiff.

Matthew R. McBride, **WINTHROP & WEINSTINE, PA**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for defendant.

This is a declaratory judgment action between a bank and its insurer. The insurer, BancInsure, Inc. ("BancInsure"), seeks a declaration that Marshall Bank, N.A.'s ("Marshall Bank") loss is not covered under the Financial Institution Bond that BancInsure issued to Marshall Bank. Marshall Bank has counterclaimed for coverage.

This matter is before the Court on BancInsure's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

**BACKGROUND**

The facts in this case are not in dispute. In 2003, Patrick Forciea ("Forciea") sought a loan from Marshall Bank on behalf of two entities, Agenzia Sports, Inc. and

Landers, LLC, to complete the purchase of a minor-league hockey team and to refinance another. To secure the loan, Marshall Bank required personal guarantees from two of Forciea's business associates, Philip Ordway ("Ordway") and Ford Nicholson ("Nicholson"), for $1.25 million each.

Two days before the bank was to disburse the loan, Forciea told the bank's president that he would fly to Florida to meet Ordway and Nicholson and obtain their signatures on the personal guarantees. On March 25, 2004, Marshall Bank received, via facsimile, the personal guarantees purportedly signed by Ordway and Nicholson. Marshall Bank disbursed the loan, in the amount of $2.56 million, to Forciea on March 26, 2004. A week later, the bank received documents purporting to be the original personal guarantees. As Marshall Bank was soon to find out, however, Forciea had forged the signatures on the guarantees.

Marshall Bank filed a timely claim for coverage with BancInsure under Financial Institution Bond No. 22FIB00397-7 that Marshall had purchased from BancInsure in 2003. This bond is a standard form contract, created with input from the Surety Association of America and the American Banker's Association. At issue in this case is Insuring Agreement (E) of the bond.[1] That agreement states, in relevant part, that BancInsure agrees to indemnify Marshall Bank for:

---

[1] Marshall Bank originally sought coverage under Insuring Agreement (D) of the bond, but it has abandoned that claim and does not oppose BancInsure's motion for summary judgment with respect to it.

> Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,
>
> (1) acquired, sold or delivered, given value, extended credit or assumed liability on the faith of any original
>
> \* \* \*
>
> (f) Corporate, partnership or personal Guarantee,
>
> \* \* \*
>
> (i) which bears a signature of any . . . guarantor . . . which is a Forgery[.]
>
> Actual physical possession of the items listed in 1(a) through (i) above by the Insured, its correspondent bank or other authorized representative is a condition precedent to the Insured's having relied on the faith of such items.
>
> A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

(Johnson Aff., Ex. A at 2-3.)  There is no dispute that, at the time Marshall Bank disbursed the loan, it possessed only the copies of the personal guarantees that had been transmitted via facsimile from Florida.  BancInsure denied coverage under Insuring Agreement (E) because Marshall Bank did not have actual physical possession of the original personal guarantees at the time of disbursal.

## ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a court is required to view the facts in a light most favorable to the nonmoving party.  *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987).

**B.     BancInsure's Motion for Summary Judgment**

As a federal court sitting in diversity, this Court applies the substantive law of the state in which it sits.  *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001).  In so doing, it is the Court's responsibility to ascertain what the state law is, not what it ought to be.  *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 626 (8th Cir. 2003).

In Minnesota, general principles of contract interpretation apply to insurance policies.  *Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 518 (Minn. 2001).  A contract should be construed to give meaning and effect to all the words in the writing.  *Employers Liability Assurance Corp. v. Morse*, 111 N.W.2d 620, 624-624 (Minn. 1961).  If the contract is ambiguous, it will be construed against the insurance company as the drafter of the contract.  *Widness*, 635 N.W.2d at 518.  Whether the contract is ambiguous is a question of law for the Court.  *Hammer v. Investors Life Ins. Co.*, 511 N.W.2d 6, 8 (Minn. 1994).  The language will be held ambiguous only if it is reasonably subject to more than one interpretation.  *Id*.

Marshall Bank makes two arguments to overcome its lack of possession of the original personal guarantees.  First, it contends that the language referring to a

"mechanically reproduced facsimile signature" means that possessing the facsimile transmissions of the personal guarantees is the same as possessing the original, or, at a minimum, creates an ambiguity which should be resolved in favor of coverage. Second, Marshall Bank argues, under the doctrine of "illusory coverage," that the Court should not interpret the contract to require actual possession of the original document because to do so would render the insurance provided by the contract functionally nonexistent.

### 1. "Mechanically Reproduced Facsimile Signature"

The Minnesota Supreme Court, interpreting the provision requiring "actual physical possession" in this type of bond, has held that the contract requires just what it says: actual physical possession of the original document at the time of disbursal. *National City Bank v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 177-78 (Minn. 1989). As a condition precedent to coverage, this provision is strictly enforced. *Id*. at 178.

To overcome the fact that it did not have actual physical possession of the originals at the time of disbursal, Marshall Bank points to the language stating that "[a] mechanically reproduced facsimile signature is treated the same as a handwritten signature." This language was not yet in the bond at the time of the *National City Bank* case. Citing to Black's Law Dictionary and its experts' opinions, Marshall Bank argues that a "facsimile signature" can mean a "signature on a document that has been transmitted by facsimile machine." At best, Marshall Bank contends, the sentence is

ambiguous, and should therefore be construed against BancInsure and given the meaning Marshall Bank proposes.

With respect to the expert evidence before the Court, the Court observes that the opinions of Marshall Bank's experts regarding the meaning of the words "original" and "mechanically reproduced facsimile signature" are based on the concept that documents transmitted electronically or via facsimile would be enforceable against the guarantor. Because an original signed guarantee is not necessary in the enforcement context, Marshall Bank contends that banking industry practices recognize that an exact replica of a guarantee qualifies as an original, and that the Court should therefore recognize it as such in this context.

Whether documents transmitted via facsimile would be enforceable by the bank against the guarantors, however, is not the question before this Court. As the Minnesota Supreme Court observed, "[t]he primary rationales for the Bond's physical possession condition are to allow an insured bank the opportunity to examine a document and to contact others to verify a document's authenticity." *National City Bank*, 447 N.W.2d at 177. It is irrelevant that Marshall Bank would not have needed the original personal guarantees to enforce them, because the purpose of the actual physical possession requirement is not to ensure that a bank can enforce the guarantees, but to give it an opportunity to examine them and, it is to be hoped, detect forgeries. Thus, banking industry practices concerning the requirements for enforcing a guarantee are not pertinent to the interpretation of Insuring Agreement (E).

While Marshall Bank's proposed definition of "mechanically reproduced facsimile signature" appears in the dictionary, it is just one of the listed definitions. The first listed definition is "[a] signature that has been prepared and reproduced by mechanical or photographic means," in other words, a signature that was generated by some mechanical process, rather than by a handwriting. Black's Law Dictionary 1387 (7th ed. 1999). It is this definition that BancInsure contends is meant by "mechanically reproduced facsimile signature."

Reading the entire provision, it is clear that BancInsure's interpretation is the correct one. At the outset, Marshall Bank's interpretation renders the word "handwritten" redundant. If Marshall Bank is correct, there is no reason to distinguish between a "handwritten" signature and a "facsimile" signature, because a facsimile signature may also be a handwritten signature in the first instance. Instead, the phrase "mechanically reproduced" is meant to distinguish that type of signature from one that is "handwritten." To mean what Marshall Bank contends that it means, the sentence would have to read "a mechanically reproduced facsimile signature is treated the same as an *original* handwritten signature," or "*the original copy* of the handwritten signature," or something of that nature. But the sentence says no such thing, because the word "original" does not appear in it. As BancInsure points out, under Marshall Bank's interpretation, sending a signature through a facsimile machine transforms the signature into a handwritten signature. It does not transform the signature into an "original" signature, nor does it change the document on which the signature appears into an "original" document.

Furthermore, Marshall Bank's interpretation makes the language requiring possession of the original documents either contradictory or meaningless. It simply makes no sense to require possession of the original documents, and then state that a facsimile copy has the same effect as the original; and indeed, as discussed above, that is not in fact what the sentence says. The contract only makes sense when the terms are given the meaning BancInsure contends is correct. *Cf. Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525-26 (Minn. 1990) (stating that courts must construe a contract as a whole and avoid an interpretation that renders any of the language meaningless). The Court therefore finds that, as a matter of law, the contract is not ambiguous. As there is no dispute that at the time of disbursal Marshall Bank did not have actual physical possession of the original personal guarantees within the unambiguous meaning of the bond, BancInsure's contractual duty to indemnify never arose.

2.     **The Illusory Coverage Doctrine**

Under the doctrine of "illusory coverage," courts will find coverage even where the literal language of the contract would preclude it, if part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent. *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 119 (Minn. Ct. App. 1995). Marshall Bank contends that its coverage was functionally nonexistent because a contract requiring actual physical possession of original documents is out of step with the reality of modern banking and electronic commerce.

The functionally nonexistent standard is a very high one, however, which Marshall Bank cannot meet. In *Jostens*, the court refused to apply the doctrine where the contract purported to provide coverage for discrimination liability but excluded coverage for, among other things, liability arising out of the violation of a statute, liability arising out of employment discrimination, or liability arising out of discrimination on the basis of race, creed, color, sex, age, or national origin. *Jostens,* 527 N.W.2d at 118-119. Despite these limitations, the court observed that "Jostens cannot argue that it paid $90,000 for nothing" because the policy provided other coverage as well. *Id.* at 118. Similarly, the bond provides Marshall Bank with a variety of other coverage. Even if it did not, however, the doctrine of illusory coverage would be inapplicable here. It cannot be said that the actual possession requirement effectively swallows the grant of coverage for losses due to forged personal guarantees. Marshall Bank could easily comply with this requirement using overnight mail. Because Marshall Bank failed to comply, BancInsure's motion for summary judgment must be granted.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [Docket No. 29] is **GRANTED**;

2. Defendant's counterclaim for breach of contract is **DISMISSED WITH PREJUDICE**;

3. The Court hereby **DECLARES** that:

a. Defendant did not have "actual physical possession" of the original personal guarantees purportedly signed by Philip Ordway and Ford Nicholson on March 26, 2004, when it disbursed the $2.56 million loan to Patrick Forciea;

b. Defendant thereby failed to comply with a condition precedent to coverage under Insuring Agreement (E) of Financial Institution Bond No. 22FIB00397-7;

c. Insuring Agreements (D) and (E) do not cover defendant's claims in this matter.

**IT IS FURTHER HEREBY ORDERED** that the Clerk of Court is to unseal plaintiff's motion for summary judgment [Docket No. 29] and all related documents pertaining to that motion [Docket Nos. 30-32, 35-37, and 40].

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 29, 2005　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge